RANDY S. GROSSMAN
Acting United States Attorney
DANIEL K. GREENE
Assistant U.S. Attorney
California Bar No. 253595
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-6783
Daniel.Greene@usdoj.gov
Attorneys for the United States

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>         v.<br><br>ISAAC MARCELINO SANCHEZ-RODRIGUEZ,<br><br>                    Defendant. | Case No.:  21-CR-02351-TWR<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT (ECF NO. 17)** |

The UNITED STATES OF AMERICA, by and through its counsel, Randy S. Grossman, Acting United States Attorney, and Daniel K. Greene, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's Motion to Dismiss the Indictment (ECF No. 17).  This response is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /

# **TABLE OF CONTENTS**

Page

Introduction ........................................................................................................ 1

Statement of Facts ............................................................................................. 2

Argument ............................................................................................................ 2

I.     Defendant's Argument To Dismiss Count 1 (§ 1325) Has Been Waived
       And In Any Event Lacks Merit ................................................................. 3

II.    The Court Should Deny Defendant's Motion To Dismiss Count 2
       Because § 1326 Survives Rational Basis Scrutiny .................................. 4

       A.     Rational Basis Scrutiny Applies .................................................... 4

       B.     Arlington Heights Does Not Apply ................................................ 5

       C.     Section 1326 Meets The Standard Of Rational Basis Scrutiny ....... 10

III.   Defendant's Must Still Be Denied Even If Arlington Heights Applies ...... 11

       A.     Racial Animus Was Not A Motivating Factor For The Passage
              Of The "Challenged Action"—The 1952 INA ............................ 12

              1.     Summary Of The Passage Of The 1952 INA ...................... 12

              2.     The 1952 INA Is The Challenged Action .......................... 15

              3.     The Legislative History Of The 1952 INA Shows That
                     There Were Legitimate Reasons For § 1326 ...................... 19

       B.     It Is Not Clear That Racial Animus Motivated The
              Passage Of The 1929 UAA ........................................................ 20

       C.     Defendant Fails To Establish Discriminatory Impact ................ 23

Conclusion  ..................................................................................................... 25

# **INTRODUCTION**

Defendant is charged in a two-count indictment with violating 8 U.S.C. § 1325(a)(1) (count 1) and 8 U.S.C. § 1326(a) (count 2). Relying on Village of Arlington Heights v. Metropolitan Development Corp., 429 U.S. 252 (1977), and United States v. Carrillo-Lopez, No. 20-cr-00026, --- F. Supp. 3d ---, 2021 WL 3667330 (D. Nev. Aug. 18, 2021), he contends that both counts must be dismissed because these statutes violate the Equal Protection Clause of the Fifth Amendment.

The Court should reject out-of-hand Defendant's argument that § 1325 should be deemed unconstitutional. This entirety of this argument is a one-sentence legal conclusion: "The motion below focuses on 8 U.S.C. § 1326; however, the same arguments apply to 8 U.S.C. § 1325, because both statutes have the same legislative history." Def. Mot. at 2. Defendant's motion contains no analysis of the legislative history of § 1325 or any legal authorities to support his conclusion that the two statutes share a legislative history. Courts reject conclusory "arguments" like these without analysis, and this Court should do the same here. In any case, were the Court to agree with Defendant's representation that the statutes share a legislative history, all the reasons for rejecting his arguments to dismiss count 2 apply to count 1 as well.

As for count 2, Defendant contends that § 1326 violates the Equal Protection Clause because it does not meet the heightened scrutiny called for by Arlington Heights, which allows courts to consider legislative intent when resolving an equal protection challenge. His reliance on Arlington Heights, however, is misplaced. Supreme Court and Ninth Circuit case law have established that rational basis scrutiny applies to equal protection challenges to Federal immigration laws, and § 1326 easily meets this standard. But even were the Court to apply Arlington Heights, Defendant has failed to come forward with a persuasive argument to dismiss count 2. The Immigration and Naturalization Act of 1952 (1952 INA) contained the law that was later codified as § 1326. But rather than rely on the legislative history for the 1952 INA to attempt to make his point concerning racial animus, Defendant urges the Court to deem § 1326

1  unconstitutional based on only a portion of the legislative history for the Undesirable
2  Aliens Act of 1929 (1929 UAA), which the 1952 INA replaced, and on another court's
3  findings of fact concerning the 1952 INA.  Defendant's argument to dismiss § 1326 is rife
4  with flaws, and consequently, his motion must be denied.

5                          **STATEMENT OF FACTS**

6          On July 28, 2021, Department of Defense personnel who were operating a Remote
7  Video Surveillance System observed Defendant and another individual running north in
8  an area within San Diego County known as the "2nd Driveway."  Compl. at 2.  This area
9  is approximately four miles east of the Otay Mesa, California Port of Entry and
10 approximately one mile north of the border.  Id.  Border Patrol Agent (BPA) Gabriel
11 responded to the area and encountered the two individuals, who at the time he encountered
12 them were attempting to abscond from another BPA.  Id.  BPA Gabriel apprehended
13 Defendant and conducted an immigration inspection, during which Defendant admitted
14 that he is a citizen of Mexico without any documents allowing him to enter or remain in
15 the United States legally.  Id.  Defendant waived his Miranda rights, and during the post-
16 arrest interview, repeated those admissions.  Id.

17         Defendant made his initial appearance on July 29, 2021.  ECF No. 3.  On August
18 11, 2021, the grand jury returned a two-count indictment: count 1 charges the felony
19 offense of unlawful entry in violation of § 1325(a)(1) and count 2 charges Defendant with
20 being a removed alien found in the United States in violation of § 1326(a).  ECF No. 11.
21 Defendant pleaded not guilty to the indictment on August 12, 2021.  ECF No. 12.  On
22 August 27, 2021, Defendant filed his motion to dismiss.  ECF No. 17.

23                              **ARGUMENT**

24         Defendant contends that the two-count indictment filed in this case must be
25 dismissed because both §§ 1325 and 1326 violate the Equal Protection Clause.  His
26 argument concerning § 1325 is too conclusory to be considered and in any case lacks
27 merit.  As for his challenge to § 1326, his reliance on Arlington Heights is misplaced
28 because rational basis scrutiny applies, and § 1326 easily satisfies this lower standard.

Moreover, even if the <u>Arlington</u> Heights test applied, Defendant's argument remains meritless. For these reasons, the motion to dismiss should be denied.

## I. Defendant's Argument To Dismiss Count 1 (§ 1325) Is Waived And In Any Event Lacks Merit

Defendant's rationale for why the Court should dismiss the charge of violating § 1325(a)(1) is contained in a single sentence in the introduction section of his brief. Citing no authority, Defendant states: "The motion below focuses on 8 U.S.C. § 1326; however, the same arguments apply to 8 U.S.C. § 1325, because both statutes have the same legislative history." Def. Mot. at 2. For three reasons, Defendant motion to dismiss count 1 should be denied.

***First***, Defendant's argument has been waived. As noted, the entirety of Defendant's analysis that § 1325 should be deemed unconstitutional is contained in a single sentence that contains no support whatsoever. Def. Mot. at 2. Courts do not entertain conclusory arguments such as this one. E.g., <u>United States v. Graf</u>, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived."). Further, because this argument was not fleshed out in Defendant's motion, he may not do so either in a reply brief or at the motions hearing.[1] <u>Id.</u>; <u>Bazuaye v. I.N.S.</u>, 79 F.3d 118, 120 (9th Cir. 1996).

***Second***, the Defendant has not addressed any of the several cases from this District that have rejected the argument that § 1325 is invalid under <u>Arlington Heights</u>. E.g., <u>United States v. Rio-Montano</u>, No. 19-CR-2123-GPC, 2020 WL 7226441, at *2-*8 (S.D. Cal. Dec. 8, 2020); <u>United States v. Lazcano-Neria</u>, No. 20-MJ -04538-AHG, 2020 WL 6363685, at *8-*9 (S.D. Cal. Oct. 29, 2020); <u>United States v. Lucas-Hernandez</u>, No. 19-MJ-24522-LL, 2020 WL 6161150, at *2-*4 (S.D. Cal. Oct. 21, 2020); <u>United States v. Ruiz-Rivera</u>, No. 20-MJ-20306-AHG, 2020 WL 5230519, at *2-*5 (S.D. Cal. Sept. 2,

---

[1] It is curious that Defendant would urge the Court to accept this conclusion when the opposite conclusion was reached in <u>Carrillo-Lopez</u>, a case on which he places great weight. 2021 WL 3667330 at *18 n.33 (declining to consider cases addressing the constitutionality of § 1325 when resolving a challenge to § 1326 because the legislative histories of are "separate"), <u>cited in</u> Def. Mot. at 21-22.

2020).  Further, we are not aware of a case in which this Court has sustained a challenge to § 1325 based on <u>Arlington Heights</u>.  Defendant fails to provide a reason for the Court to do so here.

***Third***, if the Court agrees with Defendant that § 1325 and § 1326 share the same legislative history, then all our reasons stated with respect to § 1326 below apply equally to § 1325.  As we show with respect to § 1326, that statute survives rational basis review, which is the proper standard for the Court to apply.  Section 1326 also survives <u>Arlington Heights</u> review, should the Court conduct it.

## II.   The Court Should Deny Defendant's Motion To Dismiss Count 2 Because § 1326 Survives Rational Basis Scrutiny

Defendant contends that count 2 of the indictment must be dismissed because § 1326 is unconstitutional for failure to meet the level of the scrutiny set forth in <u>Arlington Heights</u>.  Def. Mot. at 7-26.   This contention is flawed because rational basis scrutiny is the proper standard of review, and § 1326 easily meets this standard.

### A.   Rational Basis Scrutiny Applies

It is well settled that Congress has "plenary power" over immigration matters. <u>Kleindeinst v. Mandel</u>, 408 U.S. 753, 766 (1972) (quoting <u>Boutilier v. I.N.S.</u>, 387 U.S. 118, 123 (1967)); <u>United States v. Hernandez-Guerrero</u>, 147 F.3d 1075, 1076 (9th Cir. 1998) ("Over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." (quoting <u>Fiallo v. Bell</u>, 430 U.S. 787, 792 (1977) (internal quotation marks and citation omitted))). Because Congress's actions regarding "the power to expel or exclude aliens" is "largely immune from judicial control," <u>Shaughnessy v. Mezei</u>, 345 U.S. 206, 210 (1953), only "narrow judicial review" is permitted in the immigration context.   <u>Hampton v. Mow Sun Wong</u>, 426 U.S. 88, 102 n.21 (1976); <u>accord Fiallo</u>, 430 U.S. at 792; <u>Mathews v. Diaz</u>, 426 U.S. 67, 81-82 (1976).

The scope of this judicial review was discussed in <u>Kleindienst v. Mandel</u>, 408 U.S. 753, 769 (1972).  In addressing a constitutional challenge to the denial of a visa to a proposed speaker at a conference, the Supreme Court limited its review to whether any

4

"facially legitimate and bona fide" reasons existed for the denial.  Id.  The Court instructed that when such a reason is found, "courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against [constitutional] interests [of citizens]." Mandel, 408 U.S. at 770; accord Fiallo, 430 U.S. at 799 ("[I]t is not the judicial role in cases of this sort to probe the justifications for the legislative decision.").  For decades, the Supreme Court's "opinions have reaffirmed and applied [Mandel's] deferential standard of review across different contexts and constitutional claims" concerning Federal immigration law.  Trump v. Hawaii, 138 S. Ct. 2392, 2419 (2018). This standard of review is the equivalent of rational basis review.  Ledezma-Cosino v. Sessions, 857 F.3d 1042, 1049 (9th Cir. 2017) (en banc) (citations omitted).

In fact, the Ninth Circuit's *en banc* decision in Ledezma-Cosino confirmed that rational basis scrutiny applies specifically to equal protection challenges to Federal immigration law.  The Court stated that "we have consistently held . . . that ordinary rational basis review is the appropriate standard in the immigration context[,]" and to support this statement, the appeals court quoted the portion of Hernandez-Mancilla v. Holder in which the court stated, "***We review equal protection challenges to federal immigration laws under the rational basis standard[.]***"  633 F.3d 1182, 1185 (9th Cir. 2011) (emphasis added), quoted in Ledezma-Cosino, 857 F.3d at 1049.

### B.    Arlington Heights Does Not Apply

A review of Arlington Heights jurisprudence further shows that it has no applicability to a challenge to a Federal immigration law.  Defendant's theory is that a law may violate the Equal Protection Clause of the Fifth Amendment if a legislature enacts "a facially neutral law with a discriminatory purpose, which disparately impacts a disfavored group."  Def. Mot. at 4 (citing Arlington Heights, 429 U.S. at 265-68). However, and as an initial matter, the nature of the cases applying Arlington Heights that Defendant cites is completely different from a criminal immigration statute like § 1326. As shown in the bulleted summaries below, none of the cases on which Defendant relies

to argue for the application of <u>Arlington Heights</u> involved challenges to any Federal immigration statutes.

- <u>Arlington Heights</u> resolved a challenge brought under the Equal Protection Clause of the Fourteenth Amendment to the denial of a rezoning request was found to be racially discriminatory. 429 U.S. at 254-60.

- <u>Arce v. Douglas</u> referred to <u>Arlington Heights</u> in considering First- and Fourteenth-Amendment claims regarding an Arizona law that eliminated a Mexican-American Studies program in Tucson public schools. 793 F.3d 968, 973, 977-81 (9th Cir. 2015), <u>cited in</u> Def. Mot. at 5-6.

- <u>Hunter v. Underwood</u> applied <u>Arlington Heights</u> to a Fourteenth Amendment equal protection challenge to a provision of the Alabama state constitution that was enacted in 1901 and that disenfranchised individuals convicted of misdemeanors involving moral turpitude. 471 U.S. 222, 225-33 (1985), <u>cited in</u> Def. Mot. at 5, 16, 20-21, 25-26.

Defendant also cites <u>Democratic National Committee v. Hobbs</u>, which had to do with an Arizona law that allegedly violated the Voting Rights Act of 1965 and the First, Fourteenth, and Fifteenth Amendments. 948 F.3d 989, 998, 1038-42 (9th Cir. 2020) (en banc), <u>cited in</u> Def. Mot. at 17, 25. The Ninth Circuit struck down the law after applying <u>Arlington Heights</u>. <u>Hobbs</u>, 948 F.3d at 1038-42. Defendant, however, fails to recognize that the Supreme Court reversed judgment. <u>Brnovich v. Democratic Nat'l Comm.</u>, 141 S. Ct. 2321, 2350 (2021). Defendant also fails to recognize that the Supreme Court stated that the "'cat's paw' theory has no application to legislative bodies," <u>id.</u>, which is a theory Defendant invokes in his brief (and is one we discuss below). Def. Mot. at 17.

In any event, it is not surprising that Defendant has failed to come forward with any Supreme Court or Ninth Circuit decisions in which <u>Arlington Heights</u> was applied to a Federal immigration law. As shown in the previous section, before <u>Arlington Heights</u> was decided, the Supreme Court established that rational basis is the level of scrutiny that applies to constitutional challenges in the immigration context. <u>Mandel</u>, 408 U.S. at 769.

And since <u>Arlington Heights</u> was decided, the Supreme Court and the Ninth Circuit both have reiterated that rational basis scrutiny applies to challenges to immigration laws, including equal protection challenges.  <u>E.g.</u>, <u>Trump</u>, 138 S. Ct. at 2419; <u>Ledezma-Cosino</u>, 857 F.3d at 1049.  The fact that both before and after <u>Arlington Heights</u> was decided, the Supreme Court and Ninth Circuit were consistent in stating that rational basis scrutiny applies in the immigration context is a strong indicator that <u>Arlington Heights</u> does not apply in this case.

Another strong indicator that <u>Arlington Heights</u> is inapt for resolving Defendant's challenge is that the Supreme Court made clear both before and after it decided <u>Arlington Heights</u> that courts are not permitted to inquire into Congress's motives for enacting immigration laws.  <u>Fiallo</u>, 430 U.S. at 799 ("[I]t is not the judicial role in cases of this sort to probe the justifications for the legislative decision [concerning immigration]."); <u>Trump</u>, 138 S. Ct. at 2419 ("the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification" against the asserted constitutional interests of United States citizens (citing <u>Mandel</u>, 408 U.S. at 770)).  In contrast to the bright-line rule that inquiry into Congress's motives is not permitted when resolving constitutional challenges to immigration statutes, <u>Arlington Heights</u> ***demands*** this type of far-reaching inquiry.  429 U.S. at 266-67.  Again, the consistent treatment of the scope of judicial review of Federal immigration laws both before and after <u>Arlington Heights</u> was decided shows that it is not appropriate to use it to resolve Defendant's equal protection challenge.

Finally, it is acceptable that "Congress regularly makes rules that would be unacceptable if applied to citizens."  <u>Mathews</u>, 426 U.S. at 81-82.  In other words, Congress can push the boundaries further in laws directed to illegal aliens than it can push them in laws directed to citizens.  <u>Soskin v. Reinertson</u>, 353 F.3d 1242, 1254 (10th Cir. 2004) (citing <u>Mathews</u>, 426 U.S. at 78-83, for the principle that "Supreme Court precedent establish[es that] . . . the federal government can treat aliens differently from citizens so long as the difference in treatment has a rational basis.").  When considering this principle in combination with Congress's plenary power over immigration, it makes sense that the

standard for evaluating equal protection challenges to Federal immigration statutes is more deferential than the standard that applies to equal protection challenges to laws brought by United States citizens.[2]

This brings us to Carrillo-Lopez, the case from Nevada on which Defendant heavily relies and which is the only case of which we are aware has stricken down § 1326 based on Arlington Heights.  Def. Mot. at 21-22.  Like Defendant, Mr. Carrillo-Lopez was charged with felony reentry in violation of 8 U.S.C. § 1326.  Carrillo-Lopez, 2021 WL 3667330, at *1.  And like Defendant has done, Mr. Carrillo-Lopez requested that the court dismiss the indictment on the theory that § 1326 violates the Equal Protection Clause under the standard articulated in Arlington Heights.  Carrillo-Lopez, 2021 WL 3667330, at *1.  Indeed, the arguments in the two cases are identical.  The Nevada court agreed with the defendant that Arlington Heights applied, and in doing so, it rejected the Government's arguments that rational basis scrutiny was the governing standard of review.  Carrillo-Lopez, 2021 WL 3667330, at *2-*3.  Based on the materials Mr. Carrillo-Lopez provided concerning the legislative history of immigration laws from the 1920s, as well as testimony and documents offered at a hearing that addressed the 1952 INA, the court ruled that § 1326 is unconstitutional.  Id. at *4-*25.  Defendant contends that this Court should follow the findings of fact made by Carrillo-Lopez concerning the 1952 INA, which are based on evidence that is not before this Court.  Def. Mot. at 21-22.

As to the Nevada court's decision to apply Arlington Heights, the fundamental flaw is that the court failed to mention either Ledezma-Cosino, 857 F.3d at 1049, or Hernandez-Mancilla, 633 F.3d at 1185, in which the appeals court whose law controls in

---

[2] States, by contrast, must provide a compelling reason to treat aliens differently from citizens.  E.g., Graham v. Richardson, 403 U.S. 365, 370-71 (1971).  Accordingly, perhaps Arlington Heights would be appropriate to rely upon to challenge a state law that is perceived to discriminate against aliens, given that the Supreme Court has instructed that heightened scrutiny applies to such a challenge.  But, as we have shown, the heightened scrutiny of Arlington Heights is not compatible with controlling precedent that judicial review of equal protection challenges to Federal immigration statutes proceeds under the rational basis standard.

the District of Nevada stated that rational basis review applies specifically to equal protection challenges of immigration laws.  The Nevada court also gave short shrift to some of the Supreme Court precedents discussed above, namely: <u>Mandel</u>, 408 U.S. at 765, <u>Fiallo</u>, 430 U.S. at 792, and <u>Trump</u>, 138 S. Ct. at 2392.  <u>See</u> <u>Carrillo-Lopez</u>, 2021 WL 3667330, at *2.  Rather, the court relied upon cases that address far different circumstances than were before it to justify its decision to rely on <u>Arlington Heights</u>.[3] <u>Carrillo-Lopez</u>, 2021 WL 3667330 at *2-*3.

Two examples are illustrative.  Quoting <u>Wong Wing v. United States</u>, the Nevada court determined that the "Supreme Court has held that greater protections under the Fifth Amendment necessarily apply when the government seeks to 'punish[] by deprivation of liberty and property.'" <u>Carrillo-Lopez</u>, 2021 WL 3667330, at *2 (quoting 163 U.S. 228, 237 (1896)).  But <u>Wong Wing</u> resolved a claim by Chinese nationals that their imprisonment without a trial before a judge violated their due process rights, not an equal protection challenge to an immigration statute.  163 U.S. at 229.  The Nevada court also relied on <u>Regents of the University of California v. U.S. Department of Homeland Security</u>, 908 F.3d 476, 518-20 (9th Cir. 2018), which involved an equal protection challenge to the recission of the Deferred Action for Childhood Arrivals (DACA) program, and some of the parties to that suit were persons who had been allowed to remain legally in the United States while that program was in effect.  <u>Carrillo-Lopez</u>, 2021 WL 3667330, at *2.  The circumstances in <u>Wong Wing</u> and <u>Regents</u>, therefore, are very different than the circumstances in a case like this one, where an alien admittedly in the United States illegally seeks to challenge the constitutionality of the illegal reentry statute.

For these reasons, the Court should not apply <u>Arlington Heights</u>.  The Ninth Circuit has repeatedly stated that rational basis scrutiny applies.  Defendant's brief does not address this authority.  And in the only case Defendant cites that applied <u>Arlington</u>

---

[3] We recognize that this Court sometimes has applied <u>Arlington Heights</u> to the same equal protection challenge Defendant brings in this case.  <u>Gallegos-Aparicio</u>, 2020 WL 7318124 at *1 (citing <u>Rios-Montano</u>, 2020 WL 7226441 at *1-*2).  However, for the reasons stated in this section, we respectfully disagree with the Court's analysis in those cases.

1  Heights, the court failed to recognize that there is controlling law that is directly on point.

2  Carrillo-Lopez, therefore, should be ignored altogether.  Rather, the Court should apply

3  rational basis scrutiny and uphold § 1326 for the reasons stated in the next section.

4           **C.**      **Section 1326 Meets The Standard Of Rational Basis Scrutiny**

5  When applying rational basis scrutiny, the Court must uphold a Federal law if it is

6  "rationally related to a legitimate government purpose." Hernandez-Mancilla, 633 F.3d

7  at 1185.  The statute is presumed constitutional, and the party challenging it has the burden

8  "to negative every conceivable basis which might support it." Heller v. Doe, 509 U.S.

9  312, 320 (1993).  The Government has no obligation to produce evidence supporting the

10  statutory classification.  Heller, 509 U.S. at 320; Aleman, 217 F.3d at 1201.   As a

11  threshold matter, Defendant's brief contains no analysis of the rational basis standard;

12  thus, if the Court agrees with the Government that this is the proper standard of review,

13  it may deny Defendant's motion without conducting any further analysis.  Heller, 509

14  U.S. at 320; Aleman, 217 F.3d at 1201.

15  In any event, it is not credibly disputable that § 1326 is rationally related to a

16  legitimate government interest.  Section 1326 "is designed to effectively enforce the

17  immigration laws.  It is a regulatory statute enacted to assist in the control of unlawful

18  immigration by aliens." Hernandez-Guerrero, 147 F.3d at 1078 (citations and internal

19  quotation marks omitted).   "[I]t is plain that § 1326 is a necessary piece of the

20  immigration-regulation framework; without the threat of criminal prosecution that it

21  provides, Congress's immigration-regulation authority would be fatally undermined—all

22  bark and no bite." Id.  Consequently, several district courts, including this Court, have

23  upheld § 1326 after applying rational basis scrutiny.  E.g., United States v. Navarrete-

24  Castro, No. 19-CR-2717-CAB (S.D. Cal. Nov. 19, 2020), ECF No. 70; United States v.

25  Rodriguez-Barios, 20-CR-1684-LAB (S.D. Cal. Oct. 21, 2020), ECF No. 33; United

26  States v. Novondo-Ceballos, No. 21-CR-383, 2021 WL 3570229, at *3-*5 (D. N.M. Aug.

27  12, 2021); Palacios-Arias, No. 3:20-CR-62-JAG, ECF No. 37.

28

**III.    Defendant's Motion Must Still Be Denied Even If <u>Arlington Heights</u> Applies**

Defendant contends that § 1326 fails to satisfy the rubric set forth in <u>Arlington Heights</u>, and therefore, the Court must strike it down. 429 U.S. at 261-62, 265.  According to Defendant, "Congress enacted illegal entry with a discriminatory purpose" because "racism and eugenics" were a motivating factor in the criminalization of illegal entry that occurred when Congress passed the 1929 UAA. Def. Mot. at 7.  To support his argument, Defendant describes the following: some of the background of the passage of the 1929 UAA (<u>id.</u> at 7-9), some of the sequence of events leading up to its passage (<u>id.</u> at 9-11), portions of the legislative history of the 1929 UAA that contain provocative comments by a few lawmakers concerning race (<u>id.</u> at 11-17), departures from normal procedures or substantive conclusions that he perceives occurred during the passage of the 1929 UAA (<u>id.</u> at 17-18), and his belief that that the current § 1326 disparately impacts persons from Mexico and Latin America (<u>id.</u> at 18-19, 22-24).  Defendant further contends that the "taint" of the 1929 UAA infects the current illegal entry law he is charged with violating, a contention which is based in part on factual findings in <u>Carrillo-Lopez</u>.  Def. Mot. at 19-22.

Defendant's argument lacks merit.  ***First***, the "challenged action" is the 1952 INA because it contains the law that was codified as 8 U.S.C. § 1326.  Defendant has not identified any legislative history of the 1952 INA for the Court to consider; therefore, there is no basis to draw the inference that racial animus was a motivating factor in its passage.  ***Second***, if the Court nonetheless were to consider the legislative history of the 1929 UAA, the additional context we provide casts serious doubt as to the veracity of Defendant's conclusion that racism and eugenics were a motivating factor in its passage.  ***Third***, there is no disparate impact; rather, the fact that more Mexican and Latinx persons are prosecuted under § 1326 is purely a function of the fact that the United States shares a 1,954-mile land border with Mexico.

**A.    Racial Animus Was Not A Motivating Factor For The Passage Of The "Challenged Action"—The 1952 INA**

Step one in the Arlington Heights analysis is to identify the "challenged action." 429 U.S. at 261-62, 265. The parties dispute what that action is. Defendant contends that it is the 1929 UAA. Def. Mot. at 7-22. He is wrong. The 1952 INA contains the law that was codified as § 1326, which is the statute Defendant is charged in count 2 with violating and is the statute that would be stricken down were the Court to agree with Defendant. Further, there is no evidence before the Court that racial animus was a motivating factor in the passage of the 1952 INA.

**1.    Summary Of The Passage Of The 1952 INA**

The Immigration Act of 1917 established that an alien who, within three years after entry, entered the United States at any time or place other than as designated by immigration officials, or who entered without inspection, shall be deported. Pub. L. No. 64-301, § 19, 39 Stat. 874, 889, Ch. 29. Deportation was the only penalty for reentry.

When it passed the 1929 UAA, the 70th Congress made reentry after deportation a felony offense punishable by up to two years in prison and up to a $1,000 fine. Pub. L. No. 70-1018, 45 Stat. 1551, Ch. 690. This was done to strengthen the deterrent effect of the immigration laws. S. Rep. No. 70-1456 at 1 (Jan. 17, 1929) (noting that there was no law providing any penalty other than deportation for unlawful reentry, explaining that this legislation would make illegal reentry a felony offense punishable by up to two years' imprisonment and a $1,000 fine, which "is believed . . . would be of material aid in enforcing our immigration laws"). The Secretary of the Department of Labor—who was charged at that time with enforcing the country's immigration laws—agreed. In a letter incorporated into the Senate Report, the Secretary stated that the proposed law "would be of material assistance in the administration of existing immigration laws[,]" explaining that "no prohibitive law can successfully be enforced without a deterrent penalty," and "[t]he fact that possible deportation is not a sufficient deterrent to discourage those who seek to gain entry through other than regular channels is demonstrated by the frequency

12

1  with which this department is compelled to resort to deportation proceedings for the same

2  alien on several succeeding occasions." Id. at 2.

3  The 82nd Congress passed the 1952 INA.  Pub. L. 82-414, 66 Stat. 163, Ch. 477.

4  The 1952 INA "revise[d] the laws relating to immigration, naturalization, and nationality"

5  and expressly repealed the 1929 Act.  Pub. L. 82-414, Introduction, 66 Stat. 163,

6  § 403(a)(30), 66 Stat. 279.  The passage of the 1952 INA was "the final product of a most

7  intensive and searching investigation and study over a three-year period."  Pena-

8  Cabanillas v. United States, 394 F.2d 785, 790 (9th Cir. 1968), abrogation on other

9  grounds recognized by United States v. Castillo-Mendez, 868 F.3d 830, 835-36 (9th Cir.

10  2017); see also, e.g., Oscar M. Trelles, II and James F. Bailey, III, 1 Immigration and

11  Nationality Acts:  Legislative Histories and Related Documents at iii (Introduction)

12  (1979).

13  In recommending that the House pass H.R. 5678, the bill that became the 1952

14  INA, the report of the House Judiciary Committee mentioned only the following with

15  respect to illegal reentry:

16/17  As in existing law, both administrative fines and civil and criminal penalties are provided as an aid in the enforcement of the provisions of the bill.

\*\*\*

18/19/20  [C]riminal sanctions are provided for entry of an alien at an improper time or place, for misrepresentation and concealment of facts, for reentry of certain deported aliens, for aiding and assisting subversive aliens to enter the United States, and for importation of aliens for immoral purposes.

21  H. Rep. 82-1365 at 67, 68.  This shows that the fundamental purpose of the penalties in

22  § 1326 was to assist the enforcement of immigration laws.  See Hernandez-Guerrero, 147

23  F.3d at 1078.  And this is the same purpose expressed for the illegal-reentry penalties

24  adopted in the 1929 UAA.  See S. Rep. No. 70-1456 at 1-2 (Jan. 17, 1929).

25  The 1952 INA also removed all racial bars to immigration and naturalization.  See

26  Pub. L. 82-414, §§ 201, 202, 311, 66 Stat. 163, 175-78; H. Rep. 82-1365 at 28.  Further,

27  like under the Immigration Act of 1924, see Pub. L. No. 68-139, § 4, 43 Stat. 153, 155,

28  the 1952 INA provided that individuals born in the Republic of Mexico—as well as those

13

born in Canada and several other countries—were not subject to immigration quotas. See Pub. L. 82-414, § 101, 66 Stat. 163, 169 ("The term 'nonquota immigrant' means— . . . an immigrant who was born in Canada, the Republic of Mexico, the Republic of Cuba, the Republic of Haiti, the Dominican Republic, the Canal Zone, or an independent country of Central or South America, and the spouse or the child of any such immigrant, if accompanying or following to join him[.]").

Section 276 of the 1952 INA was codified at 8 U.S.C. § 1326 and established the following felony offense for reentry of a deported alien—also punishable by up to two years in prison and a $1,000 fine:

> Any alien who—
>
>> (1) has been arrested and deported or excluded and deported, and thereafter
>>
>> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this or any prior Act,
>
> shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

Pub. L. 82-414, § 276, 66 Stat. 229, codified at 8 U.S.C. § 1326; see also E. Bay Sanctuary Covenant v. Trump, 932 F.3d 742, 756 (9th Cir. 2018) (discussing history of immigration laws and the 1952 INA).

Congress has amended § 1326 several times since the 1952 INA was enacted, and lawmakers have increased its deterrent value with each amendment. Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7345, 102 Stat. 4181, 4471 (100th Congress adding a subsection (b) to § 1326 and creating enhanced penalties for aliens with prior felony convictions); Immigration Act of 1990, Pub. L. No. 101-649, § 543(b)(3), 104 Stat. 4978, 5059 (increasing the fine levels; amending the fine provision so that a defendant convicted shall be fined under 18 U.S.C.); Violent Crime Control and Law Enforcement Act of

1994, Pub. L. No. 103-322, § 130001(b), 108 Stat. 1796, 2023 (amending and increasing penalties under subsection (b)); the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, §§ 507(c), 438(b), 441 110 Stat. 1214, 1267-68, 1276, 1279 (among other things, limiting collateral attacks on deportation orders in § 1326 prosecutions); Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208, §§ 241(b), 244(d)(3)(J), 334, 110 Stat. 3009-606, -618, -635 (among other modifications, striking "arrested and deported, has been excluded and deported," and inserting "denied admission, excluded, deported, or removed").

### 2.    The 1952 INA Is The Challenged Action

Arlington Heights requires proof of discriminatory intent as to "the challenged action." 429 U.S. at 261-62, 265. Logic dictates that the 1952 INA is the challenged action—Defendant is charged with violating § 1326, which was codified when the 1952 INA was passed, and § 1326 would be stricken down were the Court to agree with Defendant's analysis. Defendant, however, maintains that the 1929 UAA is the challenged action based on a theory that racial animus motivated the passage of the 1929 UAA and the taint of that animus was not cleansed when the 1952 INA was passed. Def. Mot. at 19-21. We show below that Defendant's contentions miss the mark.

Generally, "the starting point in discerning congressional intent is the existing statutory text, not the predecessor statute." Lamie v. U.S. Trustee, 540 U.S. 526, 527 (2004) (internal citations omitted). Implicit in this statement is that Congressional intent may not carry over when a statute is amended or replaced. See United States v. Price, 361 U.S. 304, 332 (1960) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one."); Order at 7, Palacios-Arias, No. 3:20-CR-62-JAG, ECF No. 37 ("Just as 'the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one,' the views of an *earlier* Congress 'form a hazardous basis for inferring the intent of' a later one." (quoting Price, 361 U.S. at 313)). Several Circuits have declined to infer discriminatory intent from a previous enactment, instead choosing to focus on the law being challenged. E.g., Hayden v. Paterson, 594

F.3d 150, 165-69 (2d Cir. 2010); <u>Johnson v. Governor of Fla.</u>, 405 F.3d 1214, 1223-24 (11th Cir. 2005) (en banc); <u>Cotton v. Fordice</u>, 157 F.3d 388, 392 (5th Cir. 1998).

Particularly relevant is the fact that when addressing the same challenge to § 1326 that Defendant brings here, insofar as we can tell, every district court decision that has addressed the matter (other than the legally flawed <u>Carrillo-Lopez</u> decision) has ignored the 1929 UAA. That has been the case in this Court. <u>E.g.</u>, <u>Gallegos-Aparicio</u>, 2020 WL 7318124, at *4-*7 (rejecting defendant's challenge to § 1325; explaining that "<u>Arlington Heights</u> directs the Court to look at the motivation behind the official act being challenged" and "[t]he Court therefore must consider whether [defendant] has shown that Congress's *1990 enactment of Section 1325* was motivated at least in part by a discriminatory purpose"; and concluding that "the legislative history for the 1990 legislation does not reveal any discriminatory motive and provides no support for [defendant's] position") (emphasis added); <u>Rios-Montano</u>, 2020 WL 7226441 at *7-*14 (same); <u>Lucas-Hernandez</u>, 2020 WL 6161150 at *2 ("Defendant's <u>Arlington Heights</u> analysis of § 1325(a)(1) is fatally flawed because it relies entirely on legislative history from the 1920s, decades before § 1325(a)(1) was enacted."); <u>Ruiz-Rivera</u>, 2020 WL 5230519, at *3 ("Defendant's <u>Arlington Heights</u> analysis of § 1325(a)(1) is fatally flawed, however, because it relies entirely on the legislative history of the UAA, a law that was enacted decades before.").

That has been the case in other courts as well. The District of New Mexico recently stated that the circuit cases cited two paragraphs above "have rejected the notion that prior congressional intent remains operative until a future Congress makes an affirmative contrary showing." <u>Novondo-Ceballos</u>, 2021 WL 3570229, at *5 (citations omitted) (ruling that § 1326 survives rational basis review after rejecting the same <u>Arlington Heights</u> argument raised here). Similarly, the Eastern District of Virginia stated:

> That history [of the 1929 UAA], however, d[oes] little to explain why Congress passed the [INA], the law that replaced the Undesirable Aliens Act of 1929 and that the defendant allegedly violated. To challenge the INA using <u>Arlington Heights</u>, the

1

defendant must provide evidence that a discriminatory purpose motivated Congress to pass that law.  He has not done so here.

2 Palacios-Arias, 3:20-CR-62-JAG, ECF No. 37 at 5; see also United States v. Gutierrez-

3 Barba, No. CR-19-01224-001, 2021 WL 2138801, at *3-*4 (D. Ariz. May 25, 2021)

4 (declining to consider the legislative history of the 1929 UAA and rejecting challenge

5 brought under Arlington Heights); Order at 5-6, United States v. Medina, No. CR 20-

6 0057 (C.D. Cal. Jan. 5, 2021) ECF No. 33 (same).

7     Defendant nonetheless urges the Court to focus on the provocative portions of the

8 legislative history of the 1929 UAA that he has quoted in his brief.  To support this

9 request, he points to two Supreme Court cases that purportedly support his position:

10 Ramos v. Louisiana, 140 S. Ct. 1390, 1392-1402, 1408 (2020), and Espinoza v. Montana

11 Department of Revenue, 140 S. Ct. 2246, 2251-53, 2254-63 (2020).   According to

12 Defendant, these cases confirm not only that "must courts examine the racial motivations

13 of the law at the time of its passage, but that later reenactments do not cleanse the law of

14 its original taint."  Def. Mot. at 20.  In other words, Defendant contends that the taint of

15 the lawmakers' racist comments made when passing the 1929 UAA was not cleansed

16 when the 1952 INA was passed because those comments were not addressed by the 80th

17 Congress.  Id.

18     Defendant, however, mischaracterizes these cases.  As an initial matter, neither

19 cites Arlington Heights, which is not surprising given that neither resolved a challenge

20 brought under an Equal Protection Clause.  Ramos, 140 S. Ct. at 1410 (Sotomayor, J.,

21 concurring in part); Espinoza, 140 S. Ct. at 2263 n.5.  In Ramos, the Supreme Court held

22 that the Sixth Amendment requires unanimous jury verdicts to convict in federal and state

23 cases, and accordingly, it invalidated Louisiana and Oregon laws that allowed convictions

24 by non-unanimous juries.  140 S. Ct. at 1392-1402, 1408.  The Court acknowledged the

25 undisputed evidence that "race was a motivating factor in the adoption" of these states'

26 laws.  Id. at 1394.  But the Court performed a textual analysis of the Sixth Amendment

27 and overruled an earlier Supreme Court decision that had permitted Oregon and Louisiana

28

1  to convict by non-unanimous juries; the Court did not delve into or rely on legislators'
2  motivations for enacting these laws.  Id. at 1395-1402.

3      In Espinoza, the Court concluded that applying a "no aid" provision in Montana's
4  constitution to bar the use of state scholarships to attend religious schools violated the
5  Free Exercise Clause of the First Amendment.  140 S. Ct. at 2251-53, 2254-63.  The
6  majority did not rely on any "checkered tradition" underlying the no-aid provision—
7  contrary to Defendant's contention on page 20 of his motion; instead, the majority relied
8  on the fundamental point that the provision violated the First Amendment because it
9  "plainly exclude[d] schools from government aid solely because of their religious status."
10  Espinoza, 140 S. Ct. at 2255, 2259.

11      Simply put: these two Supreme Court decisions do not stand for what Defendant
12  says they do.  It is not surprising, then, that this Court others have disregarded these cases
13  when resolving the same equal protection challenge Defendant brings here.  E.g.,
14  Gallegos-Aparicio, 2020 WL 7318124, at *4-*5; Rios-Montano, 2020 WL 7226441, at
15  *4 (same); Order at 6 n.7, Palacios-Arias, No. 3:20-CR-62-JAG, ECF No. 37; Lucas-
16  Hernandez, 2020 WL 6161150, at *2-*3; Ruiz-Rivera, 2020 WL 5230519, at *3;
17  Novondo-Ceballos, 2021 WL 3670229, at *4-*5; Gutierrez-Barba, 2021 WL 2138801, at
18  *4; Order at 4-5, Medina, No. 20-cr-0057, ECF No. 33 (C.D. Cal. Jan. 5, 2021).
19  Defendant failed to provide any basis for the Court to reach a different conclusion than
20  the one reached in these decisions.

21      Moreover, in all of the cases bulleted above on page 6—the ones Defendant cited
22  in which Arlington Heights was applied to strike down a law—the courts limited their
23  review to the history of the statute or ruling being challenged.  That is to say: Defendant
24  has not identified a case that applied Arlington Heights the same way he urges the Court
25  to do here, which is to strike down a law based on its predecessor statute's legislative
26  history that may support an inference that the earlier law was passed in part due to
27  discriminatory intent.

28

In sum, the case law dictates that the Court must focus that the legislative history of the law being challenged.  Thus, if the Court reaches Defendant's <u>Arlington Heights</u> argument, it should conclude that the 1952 INA is the challenged action and should limit its review to the legislative history of that statute.

### 3. The Legislative History Of The 1952 INA Shows That There Were Legitimate Reasons for § 1326

The legislative history of the 1952 INA that we briefly described above shows that racism was not a motivating factor for its passage.  Rather, as explained above in section III(A)(1), Congress appears to have been concerned with assisting in the enforcement of immigration laws.  In fact, as also noted in section III(A)(1) above, the INA ***removed*** racial bars to immigration and naturalization for persons from Mexico and other parts of Latin America and their families.[4]

Defendant has not submitted to the Court any legislative history or other evidence that pertains to the passage of the 1952 INA.  Rather, Defendant requests that the Court adopt the factual findings made by the Nevada court in <u>Carrillo-Lopez</u> that racial animus factored into the passage of that law.  Def. Mot. at 21-22 (urging the Court to "examine the evidence upon which that district court relied, and to adopt those findings in this case to rule that the 1952 enactment was also motivated by a discriminatory purpose").  But whatever evidence was produced in that case concerning the 1952 INA has not been supplied to this Court.[5]  And this Court cannot take judicial notice of the Nevada court's findings of fact. <u>E.g.</u>, <u>M/V Am. Queen v. San Diego Marine Constr. Corp.</u>, 708 F.2d 1483, 1491 (9th Cir. 1983) ("[A] court may not take judicial notice of proceedings or records in

---

[4] It is noteworthy that the 82nd Congress that passed the 1952 INA shared only 21 members (less than 4 percent) with the 70th Congress, which passed the 1929 UAA.  <u>See</u> Order at 7 n.8, <u>Palacios-Arias</u>, No. 3:20-CR-62, ECF No. 37.  By 1952, the individuals Defendant cites in the context of the 1920s legislation, <u>see</u> Def. Mot. at 8-17, were either out of Congress (Albert Johnson, Patrick O'Sullivan, Robert Green, John Schafer) or dead (Coleman Blease, James Davis, John Box, Harry Laughlin).

[5] Defendant should not be permitted to submit those materials now should he request to do so because there is no reason why they could not have been included with his motion. <u>See</u> <u>Graf</u>, 610 F.3d at 1166; <u>Bazuaye</u>, 79 F.3d at 120.

19

1   another case so as to supply, without formal introduction of evidence, facts essential to

2   support a contention in a cause then before it.").

3   　　　As shown in the previous section, Defendant's argument that the racist comments

4   that were made by some lawmakers during the debate of the 1929 UAA "taints" the

5   passage of the 1952 INA not only finds no support in the case law he cites, it is

6   contradicted by other case law.  Therefore, the legislative history of the 1929 UAA is not

7   relevant to this case.   Because Defendant has presented no evidence that racial animus

8   appears in the legislative history of the 1952 INA, his <u>Arlington Heights</u> argument fails.

9   　　　　　**B.**　　　**It Is Not Clear That Racial Animus Motivated The Passage Of**

10   　　　　　　　　　**The 1929 UAA**

11   　　　Even were the Court to assume for the sake of argument that the legislative history

12   relating to the 1929 UAA is relevant, the Court should be dubious about accepting

13   Defendant's characterization of the motivation for its passage.  This is so, because

14   Defendant relies on the affronting opinions of fewer than ten of the 531 members of the

15   70th Congress to argue that racism was the "primary" factor motivating the passage of the

16   1929 UAA.  In making this argument, however, Defendant eschews statements by some

17   of those same lawmakers that show that when the 1920s laws were being debated,

18   Congress had broader concerns about economic issues and was not simply motivated by

19   animus toward Mexican and Latinx persons.  Should the Court consider Defendant's

20   arguments concerning racial animus, it should also consider more than just the

21   provocative remarks he has reproduced.

22   　　　For example, Defendant states that Rep. Thomas Blanton "complained that

23   Mexicans 'come into Texas by hordes[.]'" Def. Mot. at 16.  (quoting Mot. Ex. C, 70 Cong.

24   Rec. 3619 (1929)).  Defendant's brief fails, however, to mention that a moment later, Rep.

25   Blanton discussed the need to preserve jobs for America citizens, asserting that "They are

26   taking away jobs from American citizens."  70 Cong. Rec. 3619 (1929).  Defendant also

27   cites Rep. Blanton as "urg[ing] the House to 'apprehend the thousands of these Mexicans

28   who are in Texas now unlawfully and put them back across the Rio Grande and keep them

there.'"  Def. Mot. at 16 (quoting Mot. Ex. C, 70 Cong. Rec. 3619 (1929)).  Defendant omits the very next sentence, which again is tethered to jobs: "Then you would not have the report coming in here from Austin, Tex., and many other places that many Americans are going to be without jobs[.]" 70 Cong. Rec. 3619 (1929).

As a second example, Defendant writes that Rep. Blanton "challenged others to visit the international ports of entry in Texas to see the 'hordes that come across the bridges with no intention of ever going back.'"  Def. Mot. at 16 (quoting Mot. Ex. C, 70 Cong. Rec. 3619 (1929)).  The very next words in that quoted passage—which has a comma after "ever going back," not a period—are "coming across to get jobs of Americans[.]"  70 Cong. Rec. 3619 (1929); see also id. (stating that "it ought to be stopped, and if we do not do it we are going to have Americans starving to death in the Hoover administration.").

And as third and fourth examples, Defendant also selectively quotes Reps. Schafer and Box.  Defendant cites Rep. Schafer as saying, "[t]hese Mexicans also come into Wisconsin in droves[.]" Def. Mot. at 16 (quoting Mot. Ex. C, 70 Cong. Rec. 3619 (1929)). The full original quote is: "These Mexicans also come into Wisconsin in droves, and take the places of American citizens in the factories and on the farm.  Often we see the spectacle of war veterans walking the streets unable to obtain employment because of the unfair competition of cheap Mexican labor."  70 Cong. Rec. 3619 (1929).  And on pages 12, 13, 14, 16, and 17 of his motion, Defendant notes several startling comments of Rep. Box.  But Rep. Box also commented during congressional debate about the issue of jobs for his constituents: "They do take the places of American workmen, who are already put to it to find jobs; in fact, there are hundreds of thousands, possibly millions, of Americans out of employment right now."  70 Cong. Rec. 3619 (1929).[6]

---

[6] Defendant also cites a "radio speech" by Rep. Robert Green in January 1928, which were read into the record by another representative.  Def. Mot. at 13 (quoting Mot. Ex. F, 70 Cong. Rec. 2461 (1928)).  Even in light of his race-related comments, Rep. Green was not targeting Mexicans, but appears focused mainly on an overall strengthening of immigration law and resources.  70 Cong. Rec. 2461 (1928) (noting the "tremendous situation" facing immigration authorities, "[h]undreds of thousands of aliens cross these borders annually, thousands of whom remain in the United States," the "immigration department" employed

We recognize, of course, that the opinions quoted by Defendant were reprehensible. But those opinions are the only part of the story that Defendant tells.  As outlined above, even a shallow dive into the legislative history of the immigration laws from the 1920s reveals a more complicated picture than Defendant has provided, and a closer examination casts doubt on Defendant's assertion that the racial animus expressed by a handful of lawmakers constituted a "motivating factor" for the passage of the 1929 UAA (much less, as he states on page 17 of his motion, "the **_primary_** factor").  Arlington Heights, 429 U.S. at 265.  On this point, United States v. O'Brien is instructive:

> Inquiries into congressional motives or purposes are a hazardous matter. When the issue is simply the interpretation of legislation, the Court will look to statements by legislators for guidance as to the purpose of the legislature, because the benefit to sound decision-making in this circumstance is thought sufficient to risk the possibility of misreading Congress' purpose. ***It is entirely a different matter when we are asked to void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of Congressmen said about it. What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.***

391 U.S. 367, 383-84 (1968) (emphasis added).

Further, Defendant's reliance on "the cat's paw" doctrine is misplaced.  Def. Mot. at 17.  In Hobbs, which Brnovich overruled, the Ninth Circuit relied upon this doctrine to attribute discriminatory intent to legislators who had not expressed it.[7]  Hobbs, 948 F.3d at 1041 ("The good-faith belief of these sincere legislators does not show a lack of discriminatory intent behind H.B. 2023.  Rather, it shows that well meaning legislators were used as 'cat's paws.'").  Likewise, Defendant invokes this doctrine to argue that "Congressmen who might not have otherwise endorsed racially motivated legislation were consistently advised of the 'inferiority' of the 'Mexican race' during legislative

---

only 2,700 people—"inadequate to cope with some 7,000,000 aliens and some 10,000 miles of border to patrol," and the burden, threat, and "economic loss," as he saw it, to public institutions).

[7] "The doctrine is based on the fable, often attributed to Aesop, in which a clever monkey induces a cat to use its paws to take chestnuts off of hot coals for the benefit of the monkey." Hobbs, 948 F.3d at 1041.

sessions in the five years leading up to the law's passage[,]" suggesting that those who sat silent agreed with their colleagues who voiced racist opinions.  Def. Mot. at 17 (citing Hobbs, 948 F.3d at 1041).  But the Supreme Court has stated that this theory "has no application to legislative bodies," Brnovich, 141 S. Ct. at 2350, which undercuts Defendant's assertion that racism was the primary factor for the passage of the 1929 UAA.

In short, Defendant asks the Court to do what the Supreme Court has cautioned should not be done—strike down § 1326 based on the opinions of "fewer than a handful of Congressman" expressed during the debate on a law that is no longer in effect, and also to attribute those affronting opinions to the entire 72nd Congress.  Brnovich, 141 S. Ct. at 2350; O'Brien, 391 U.S. at 383-84. For the reasons stated in this section, the Court should decline to do so.

### C.   Defendant Fails To Establish Discriminatory Impact

Finally, Defendant argues that § 1326 has a disparate impact and discriminatory intent based on the high percentage of Border Patrol arrests of Mexican or Latinx individuals and other claimed subset disparities.  Def. Mot. at 22-24.  Those, however, numbers do not establish that § 1326 violates his equal protection rights.

We provide the latest available figures for context.  In Fiscal Year 2019, Border Patrol had 859,501 total encounters,[8] of which 851,508—99.1 percent—were on the southwest border of the United States.[9]  In Fiscal Year 2020, Border Patrol had 405,036 total encounters,[10] and 400,651—98.9 percent—of those occurred on the southwest

---

[8] U.S. Customs and Border Protection, CBP Enforcement Statistics Fiscal Year 2021: Total CBP Enforcement Actions, https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics (accessed Sept. 2, 2021)

[9] U.S. Customs and Border Protection, Southwest Border Migration FY 2019: U.S. Border Patrol Southwest Border Apprehensions FY 2019 (Nov. 14, 2019), https://www.cbp.gov/newsroom/stats/sw-border-migration/fy-2019 (accessed Sept. 1, 2021).

[10] U.S. Customs and Border Protection, CBP Enforcement Statistics Fiscal Year 2021: Total CBP Enforcement Actions, https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics (accessed Sept. 1, 2021)

border.[11] In light of these data, it is unsurprising that a high percentage of apprehensions (and potentially prosecutions) are of Mexican or Latinx individuals.

Data such as these do not show disparate impact or discriminatory intent sufficient to sustain an equal protection challenge.  In  DHS v. Regents of the Univ. of Cal., for example, the Supreme Court considered and rejected the argument that the rescission of the DACA program disparately impacted Latinx people from Mexico (who were 78 percent of DACA recipients), concluding: "because Latinos make up a large share of the unauthorized alien population, one would expect them to make up an outsized share of recipients of any cross-cutting immigration relief program.  Were this fact sufficient to state a claim, virtually any generally applicable immigration policy could be challenged on equal protection grounds." 140 S. Ct. 1891, 1915-16 (2020) (pl. op.) (citation omitted). But more importantly, this Court in Gallegos-Aparicio concluded that defendant's "conten[tion] that Mexicans and other Latin Americans make up the vast majority of individuals apprehended at the border" did not "show discriminatory motive, given that the disparity is explainable on grounds other than race."  No. 19-CR-2637-GPC, at *8 (citing Arlington Heights, 429 U.S. at 266); accord Rios-Montano, No. 19-CR-2123-GPC, 2020 WL 7226441, at *14-*16 (reaching same conclusion); Order at 6 n.7, Palacios-Arias, No. 3:20-CR-62-JAG, ECF No. 37 (same); Lucas-Hernandez, 2020 WL 6161150, at *2-*3 (same); Ruiz-Rivera, 2020 WL 5230519, at *4 (same).  Defendant's brief does not address these common-sense conclusions concerning the impact § 1326 has, and for this additional reason, Defendant fails to show that the statute violates his equal protection rights under Arlington Heights.

Finally, because Defendant cannot, as a matter of law, establish his equal protection claim even under Arlington Heights, the Court should not hold an evidentiary hearing on his motion to dismiss.  Def. Mot. at 25-26 (requesting hearing); United States v. Irwin,

---

[11] U.S. Customs and Border Protection, Southwest Border Migration FY 2020: U.S. Border Patrol Southwest Border Apprehensions FY 2020 (Nov. 19, 2020), https://www.cbp.gov /newsroom/stats/sw-border-migration-fy2020 (accessed Sept. 1, 2021).

612 F.2d 1182, 1187 (9th Cir. 1980) (stating standard for when an evidentiary hearing may be conducted on a motion to dismiss).

### CONCLUSION

For the foregoing reasons, Defendant's motion should be denied.

DATED:  September 3, 2021                    Respectfully submitted,

                                             Randy S. Grossman
                                             Acting United States Attorney

                                             */s/Daniel K. Greene*
                                             DANIEL K. GREENE
                                             Assistant U.S. Attorney